Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for Dashco, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-205-ELG |
| | ) | (Chapter 11) |
| ADAMS 3, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**CHAPTER 11 PLAN OF REORGANIZATION OF
ADAMS 3 LLC PROPOSED BY DASHCO, INC.**

Comes now Dashco, Inc. ("Dashco," the "Secured Creditor," or the "Plan Proponent"), by and through undersigned counsel, pursuant to Section 1121(c) of Title 11 of the United States Code, and provides the following plan of reorganization (the "Plan") for Adams 3, LLC ("Adams 3" or the "Debtor"):

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT ISSUED PURSUANT TO SECTION 1125(b) OF TITLE 11 OF THE UNITED STATES CODE IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018 AND IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

**1.1    Scope of Definitions.**  For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan.  Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**1.2    Definitions.**

a.    "Administrative Claim" means All Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

b.    "Administrative Claims Bar Date" means the last date for a person to file any applications or requests for payment of Administrative Claims and shall be specifically defined as the first business day next succeeding the thirtieth calendar day following the Confirmation Date.

c.    "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

d.    "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the District of Columbia as such term is defined in Bankruptcy Rule 9006(a).

e.    "Cash on Hand" means any currency or deposits being held by the Chapter 11 Trustee, or hereafter collected by the Chapter 11 Trustee. The amount of the Cash on Hand is not possible to be known and will fluctuate due to payment of claims and post-petition recoveries.

f.    "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for

2

professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein or in the Official Form 425A; and (xviii) to the extent not otherwise set forth above, as described in the Official Form 425A. "Causes of Action" shall *not* include the HAP Claims.

      g.      "Chapter 11 Trustee" means Bradley Jones, Esq. in his capacity as the Chapter 11 trustee of the Debtor's estate.

      h.      "Claim" has the meaning ascribed in Section 101(5) of the Bankruptcy Code.

      i.      "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

      j.      "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code

      k.      "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

      l.      "Confirmation Date Assets" means all Property of the Debtor as of the Confirmation Date (excluding assets previously distributed, abandoned, expended or otherwise disposed of by the Debtor prior to the Confirmation Date and not otherwise subject to recovery), including, without limitation, all Causes of Action and other Property existing as of the Petition Date and acquired by any or all of the Debtor during the pendency of this case under the Bankruptcy Code or otherwise.

      m.      "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

      n.      "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

      o.      "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

      p.      "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

q. "Distribution" means each distribution of Cash to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Debtor on each Distribution Date.

r. "Distribution Date" means the date(s) which Distributions shall be made pursuant to and under the terms of this Plan by the Debtor.

s. "Effective Date" shall mean the date fourteen days after the Confirmation Date.

t. "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

u. "Estate" means the estate created in this case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

v. "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

w. "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

x. "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Claim, a Secured Claim, a Priority Claim or a Priority Tax Claim.

y. "HAP Claims" shall mean the right of the Estate to collect monies from the District of Columbia, or any political or administrative division or subdivision thereof, on account of the utilization of the Real Estate by consumer tenants, for any time period preceding the date on which the Confirmation Order is entered. "HAP Claims" are expressly excluded from the definition of "Causes of Action" set forth *infra*.

z. "Holder" means a Person holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

aa. "Impaired" has the meaning ascribed in Section 1124 of the Bankruptcy Code.

bb. "Insider" has the meaning ascribed in Section 101(31) of the Bankruptcy Code.

cc. "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

4

dd. "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

ee. "Petition Date" means November 1, 2022, the date on which the Debtor commenced this case by filing a petition for relief pursuant to Section 301 of the Bankruptcy Code.

ff. "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

gg. "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

hh. "Priority Scheme" shall mean the priorities for the payment of claims as set forth in 11 U.S.C. § 507.

ii. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

jj. "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

kk. "Property" means all assets and property included within "property of the estate" as set forth in and within the meaning of Section 541 of the Bankruptcy Code.

ll. "Purchase Price" means $4,260,000.00 in the lawful currency of the United States.

mm. "Real Estate" means the real property commonly known as 2406 18th Street, NW, Washington, DC 20009; 2408 18th Street, NW, Washington, DC 20009; and 2410 18th Street, NW, Washington, DC 20009, together with all improvements thereupon.

nn. "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

oo. "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

pp. "U.S. Trustee" shall mean the Office of the United States Trustee.

**1.3  Interpretation.** For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended,

5

modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4     Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

### PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

**2.1     Administrative Expense Claims**.  On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim. Upon information and belief, the whole of Administrative Expense Claims will not exceed $160,000.00 or will otherwise be satisfied from the Cash on Hand as such funds are or become available. Of the $560,000.00 of immediately available funds provided by Dashco in accordance with Paragraph 4.1.3., the sum of $160,000.00 will be reserved for the payment of Administrative Claims.

To facilitate the orderly payment of Administrative Claims, the Confirmation Order will establish an Administrative Claims Bar Date as described in the Plan. <u>All Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as Administrative Claim holders</u>. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

**2.2     U.S. Trustee's Fees.** The United States Trustee shall receive payment, on or before the Effective Date, of all fees owed under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid on the date on which the case is closed or converted to a case under Chapter 7.

**2.3     Priority Tax Claims**. Unless a Final Order otherwise provides, on the Effective Date, each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.

**2.4     Full Satisfaction, Discharge and Release**.  The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims and allowed Priority Tax Claims

against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

## ARTICLE III

## CLASSIFICATION, IMPAIRMENT AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR

**3.1    Generally.**  All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in Classes as set forth below.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

**3.2    Identification and Treatment of Classes.**

The following are the designations for, and treatment of, the Classes of Claims against and Equity Interests in the Debtor:

**(a)    Class 1 - Allowed Secured Claim of Dashco, Inc.**  Class 1 consists of the allowed Secured Claim of Dashco, Inc. in an amount owed as of the Petition Date of $4,887,810.00 plus accruing postpetition interest, fees and costs at the contract rate. The Class 1 Claim of Dashco may receive certain monies hereunder. The sum of $3,700,000.00 of the Class 1 Claim of Dashco shall be applied as a credit to the Purchase Price.

Class 1 is an impaired class.

**(c)    Class 2 – Allowed Unsecured Claims.** Class 2 shall consist of all Claims that are not Secured Claims. Class 2 presently consists of the Claim of 18th DC, LLC in the amount of $2,600,370.00. Class 2 will also include any unsecured deficiency owed to the Class 1 Claim of Dashco, Inc. These Claims will be paid, *pari passu*, from the Cash on Hand. It is not anticipated funds will be sufficient to pay these Claims.

Class 2 is an impaired class.

**(d)    Class 3 – Equity Interest.**

Class 3 shall consist of the Equity Interests of the Debtor. This class shall receive nothing under this Plan.

Class 3 is an Insider and is an Impaired class. Class 3 is deemed to have rejected the Plan pursuant to Section 1123(g) of the Bankruptcy Code.

# ARTICLE IV

# MEANS OF IMPLEMENTING THE PLAN

**4.1** **Sale of Real Estate**.

    **4.1.1** **Conveyance to Dashco or its Assignee.** Within three business days of the Effective Date, the Real Estate shall be transferred to Dashco or the designee of Dashco (with it being reasonably anticipated such designee will be Waterloo Rescue, LLC a Virginia limited liability company), free and clear of all (i) Liens, mortgages, security interests, conditional sale or other title retention agreements, pledges, claims, judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, and restrictions of all kinds and (ii) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, claims, rights, including rights of setoff or recoupment, defenses, causes of action (whether at law or in equity), obligations, demands, guaranties, interests and matters of any kind or nature whatsoever that arise prior to closing. All Classes of Claims will be paid (to the extent there are funds for payment) at closing in accordance with the treatment provided for in the Plan.

    **4.1.2** **Deed.** The sale provided for in Section 4.1.1 hereof shall be consummated pursuant to Section 363 of the Bankruptcy Code, and the Chapter 11 Trustee shall present to Dashco or the designee of Dashco an executed trustee's deed for the Real Estate, in a form to be prepared by Dashco and to be reasonably agreeable to the Chapter 11 Trustee, on the date of transference under Section 4.1.1 hereof. Entry of the Confirmation Order shall constitute approval of such conveyance pursuant to Section 363 of the Bankruptcy Code and entry of the Confirmation Order together with the provision of the full payment of sale as provided in Paragraph 4.1.3 and the conveyance to Dascho or its Assignee as provided in Paragraph 4.1.1 shall constitute the closing of the sale contemplated by this Court's June 6, 2023 Order entered at [Dkt. No. 116] in this Bankruptcy Case.

    **4.1.3** **Payment for Sale.** Within five business days of the entry of the Confirmation Order, Dashco shall pay the Purchase Price to the Chapter 11 Trustee. Specifically, Dashco shall deliver to the Chapter 11 Trustee immediately available funds in the sum of $560,000.00, via corporate check, cashier's check, wire transfer, money order, or currency backed by the full faith and credit of the United States, *less* any funds previously paid to the Trustee, by Dashco, in the form of an earnest money deposit or otherwise earmarked for retirement of tax obligations. These funds shall, in turn, be used to satisfy the Administrative Expense Claims and Priority Tax Claims. Commensurate with the delivery of such monies, Dashco shall, too, be deemed to have irrevocably waived $3,700,000.00 of its Class 1 Claim, with such monies being applied as a credit against the Purchase Price. Except as provided for in Section 4.1.4 hereof, Dashco shall have no further obligation to the Chapter 11 Trustee or the Estate.

    **4.1.4** **Payment of Excess Taxes.** Should the Priority Tax Claims exceed $400,000.00 as of the Confirmation Date, Dashco shall (i) first, have the right to challenge the imposition, calculation, assessment, levying and/or collection of any such taxes, through the initiation of a claim objection or adversary litigation in the Bankruptcy Court, or through such other judicial or quasi-judicial avenues as Dashco may deem fit in its sole and absolute discretion;

8

and (ii) second, within five days of being first apprised of such additional Priority Tax Claims, but not sooner than the fifth day following final resolution of any dispute thereof if such a dispute is initiated within five days of when Dashco is first apprised of such additional Priority Tax Claims, pay to the Chapter 11 Trustee monies equal to the difference between the whole of the Priority Tax Claims and the sum of $400,000.00. For the avoidance of doubt, Dashco shall have no obligation to pay monies to the Chapter 11 Trustee for any taxes attendant to the Real Estate that may accrue or otherwise become due and owing on any date after the date on which the sale provided for in Section 4.1 hereof is closed upon, with any such taxes thereafter being an obligation extraneous to this proceeding.

### 4.2 Liquidation of Causes of Action

**4.2.1 Estate Representative.** For purposes of liquidating the Causes of Action, for the benefit of the holders of Class 1 Claims, Maurice B. VerStandig, Esq. shall be the representative of the estate appointed for such purpose pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative"). The Estate Representative may resign, or be removed by the Bankruptcy Court for good cause shown by any holder of a Class 1 Claim or the United States Trustee, and shall be replaced by a designee of the Bankruptcy Court's election in such circumstance.

**4.2.2 Engagement of Counsel.** The Estate Representative shall promptly, and in no event later than 30 days from entry of the Confirmation Order, seek leave of the Bankruptcy Court to employee counsel to liquidate the Causes of Action through the filing of one or more adversary claims in the Bankruptcy Court. The Estate Representative may seek to engage her or his own legal services for such purpose; to the extent pragmatic, such representation by counsel shall be on a contingent basis, and the payment of any counsel shall be expressly subject to approval by the Bankruptcy Court. If the Estate Representative is granted leave to engage her or his own legal services, the Estate Representative shall not be entitled to any compensation over and above the payment of such legal fees and costs; if the Estate Representative does not engage her or his own legal services, or is not an attorney, the Estate Representative shall be paid five percent (5%) of all monies recovered through liquidation of the Causes of Action.

**4.2.3 Collection.** The Estate Representative shall take such actions as may be proper, in her or his sole discretion, to liquidate the Causes of Action, including, but not limited to, (i) negotiating settlement of such claims, with such settlement being subject to the approval of the Bankruptcy Court; (ii) seeking entry of a judgment on such claims, by way of motions practice of trial; and (iii) taking actions to collect upon any judgment or settlement sum, including through the filing of papers in courts other than the Bankruptcy Court. Once funds are collected, or from time to time if funds are collected in more than increment, the Estate Representative shall account to the Bankruptcy Court for such funds and such funds shall then be distributed in accord with one or more orders of the Bankruptcy Court, upon notice and a hearing.

**4.2.4 Beneficiary.** It is reasonably anticipated the sole beneficiary of the mechanism established in this Section 4.2 shall be the holders of any Class 1 claims, as it is not reasonably expected the Causes of Action will yield monies sufficient to pay any junior class(es)

9

of creditors. Should the funds collected, net of any contingency fee payable to counsel for the Estate Representative, exceed the funds requisite to pay the Class 1 Claims in full (after deducting from said claims the monies being applies as a credit to the Purchase Price), such excess monies shall be distributed in accord with the Priority Scheme set forth in this Plan.

**4.2.5   Not a Trust.**  The mechanism established in this Section 4.2 is *not* a liquidating trust and shall not be treated or construed as a liquidating trust except for purposes of analogy. The mechanism established in this Section 4.2 is, rather, the simple engagement of the allowances of Section 1123(b)(3)(B) of the Bankruptcy Code that "...a plan may ... provide for... the retention and enforcement by ... a representative of the estate appointed for such purpose, of any such claim or interest…"

**4.3   Liquidation of HAP Claims.**   The Chapter 11 Trustee shall undertake best efforts to liquidate the HAP Claims. Any monies received pursuant to such efforts shall be distributed in accord with the Priority Scheme set forth in this Plan.

**4.4   Cash**.  The Chapter 11 Trustee shall distribute such Cash on Hand as may exist, upon the conclusion of his efforts to liquidate the HAP Claims, to creditors herein, in accord with the Priority Scheme established by this Plan. To the extent the Plan provides for a payment and there is not sufficient Cash on Hand to make a required payment, payment of the remaining Cash on Hand will be made *pari passu* in accordance with the Priority Scheme. To the extent there is not sufficient Cash on Hand for a payment required by this Plan to be made, no such payment will be made by the Trustee.

**4.5   Retention of Estate Assets.**  Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, all Causes of Action and HAP Claims shall remain an asset of the Debtor's bankruptcy estate – and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code – until the earlier of (i) with regard to the Causes of Action, such time as the Estate Representative may file a notice of his intent to abandon said Causes of Action; (ii) with regard to the HAP Claims, such time as the Chapter 11 Trustee may file a notice of his intent to abandon said HAP Claims; and (iii) the latest date permitted by controlling law.

**4.6   Chapter 11 Trustee Best Efforts**. The Chapter 11 Trustee shall undertake best efforts to deliver the Real Estate to Dashco, or the designee of Dashco, in good condition, free of commercial tenants. Should any commercial tenants remain in the Real Estate at the time of said conveyance, the Chapter 11 Trustee shall continue to make a good faith effort to rid the Real Estate of commercial tenants and the Estate Representative may, in said representative's sole and absolute discretion, undertake efforts to utilize the Bankruptcy Court to oust, evict, remove, or otherwise separate any such commercial tenants.

**4.7   Dissolution.**  Upon the Confirmation Order becoming a Final Order, the Debtor shall be deemed dissolved and wound up without any further action required on the part of the Debtor, the member(s) of the Debtor, or any other person.

# ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.1    Delivery of Distributions**.  Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed).

**5.2    No Interest Unless Otherwise Provided**.  No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

**5.3    Undistributed Property**.  If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder.  Unclaimed Property shall be donated to The Adler Foundation, a charity qualified pursuant to Section 501(c)(3) of Title 26 of the United States Code.

# ARTICLE VI

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**6.1    Conditions to Effectiveness of Plan.**  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order; and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2    Notice of Confirmation of the Plan.**  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

# ARTICLE VII

## RETENTION OF JURISDICTION

**7.1    Retention of Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)    to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)    to enable the Estate Representative to prosecute any and all Causes of Action and to recover any transfers, assets, properties or damages to which it may be entitled under applicable

provisions of the Plan, the Bankruptcy Code or any federal, state or local laws, including avoidance actions.

(d) to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(e) to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(f) to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(g) to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(h) to enter a final decree closing this Chapter 11 case.

**7.2    Abstention and Other Courts.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE VIII

## RELEASE FOR PLAN PROPONENT AND PROFESSIONALS

**8.1    Limitation of Liability in Connection with the Case, the Plan, and Related Documents.** Pursuant to § 1125(e) of the Bankruptcy Code; the Trustee and his professionals, representatives, successors, and assigns; and the Plan Proponent (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account

12

of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

# ARTICLE IX

# MISCELLANEOUS PROVISIONS

**9.1** **Severability.** Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2** **Binding Effect.** Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3.** **Transfer Tax Exemption.** Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of the Real Estate provided for under this Plan, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the properties located at 2406 18th Street, NW, Washington, DC 20009; 2408 18th Street, NW, Washington, DC 20009; and 2410 18th Street, NW, Washington, DC 20009, together with all improvements thereupon.

**9.4** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the District of Columbia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5** **Preservation of Causes of Action and Defenses.** To the fullest extent provided by 11 U.S.C. § 1123(b)(3), the Plan preserves all litigation claims and causes of action belonging to the bankruptcy estate. For avoidance of doubt, all Causes of Action as that term is defined in the Plan are preserved as are all HAP Claims. Neither the Confirmation Order nor the doctrines of claim or issue preclusion will waive, release, settle, or otherwise limit the ability of the Estate Representative or the Trustee to pursue the Causes of Action or the HAP Claims.

**9.6** **Timing of Distributions.** Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.7** **Revocation or Withdrawal of Plan.** The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred. If the Plan is revoked or withdrawn prior to the entry of the

Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.8     Nonmaterial Modifications.**  The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.9     Material Modifications.**  Modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**9.10    Cramdown.**  This section shall constitute the Plan Proponent's request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of Section 1129(a)(8) of the Bankruptcy Code may not be met.

**9.11    No Recourse.**  No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Trustee and his professionals, the Debtor, or the Plan Proponent and its professionals, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.12    Notices.**  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

> Maurice B. VerStandig, Esq.
> THE VERSTANDIG LAW FIRM, LLC
> 1452 W. Horizon Ridge Pkwy, #665
> Henderson, NV 89012
> *Attorney for Dashco, Inc.*
>
> Bradley D. Jones, Esq.
> ODIN FELDMAN & PITTLEMAN, P.C.
> 1775 Wiehle Avenue, Suite 400
> Reston, Virginia 20190
> *Chapter 11 Trustee*

**9.13    Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act

14

may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.14** **Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**9.15** **Entry of a Final Decree**. The Chapter 11 Trustee may file a motion with the Bankruptcy Court to obtain the entry of a final decree upon completion of Plan payments, the exhaustion of the Cash on Hand, the resolution of the HAP Claims, or on such other time as the Trustee determines appropriate.

                                      Respectfully submitted,

Dated: June 9, 2023                      By: /s/ Maurice B. VerStandig
                                              Maurice B. VerStandig, Esq.
                                              Bar No. MD18071
                                              The VerStandig Law Firm, LLC
                                              1452 W. Horizon Ridge Pkwy, #665
                                              Henderson, Nevada 89012
                                              Phone: (301) 444-4600
                                              Facsimile: (301) 444-4600
                                              mac@mbvesq.com
                                              *Counsel for Dashco, Inc.*