**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **ADAMS 3, LLC,** | * | Case No. 22-00205-ELG |
| | * | Chapter 11 |
| Debtor. | * | |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (1) APPROVING AUCTION AND BIDDING PROCEDURES TO FACILITATE THE SALE OF THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF LIENS CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f); (2) SCHEDULING AN AUCTION AND SALE HEARING; AND (3) APPROVING THE SALE OF REAL PROPERTY TO THE SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**

BRADLEY D. JONES, CHAPTER 11 TRUSTEE ("**Trustee**"), by counsel, and pursuant to 11 U.S.C. §§ 105, 363(b) and 363(f), and Rule 6004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") hereby files this motion for entry of an order: (1) approving auction and bidding procedures to facilitate the sale three of parcels of real property free and clear of liens, claims, and interests pursuant to 11 U.S.C. § 363 (f); (2) scheduling an auction and sale hearing for the sale of those three parcels; and (3) approving the sale of the Debtor's real property to the successful bidder at the auction free and clear of liens, claims, and interests ("**Sale and Procedures Motion**"), and in support thereof, states as follows:

**Preliminary Statement**

This chapter 11 case was commenced on November 1, 2022. The Trustee appointed on December 2, 2022. On January 24, 2023, this Court entered an Order Authorizing Employment of Real Estate Agent and Brokers [Dkt. No. 66] ("**Real Estate Agent Employment Order**") to market

---

**Alexander M. Laughlin** (DC Bar No. 484489)
**Bradley D. Jones** (Bankr. D.D.C. No. VA68)
ODIN, FELDMAN & PITTLEMAN, P.C.
**1775 Wiehle Ave., Suite 400**
**Reston, Virginia 20190**
**Tel:    (703) 218-2134 (Mr. Laughlin)**
         **(703) 218-2176 (Mr. Jones)**
**Fax:    (703) 218-2160**
**Alex.Laughlin@ofplaw.com**
**Brad.Jones@ofplaw.com**

*Counsel for the Chapter 11 Trustee*

the Property for sale through a sales agent ("**Sales Agent**") Stephen Karbelk, team leader of Real Markets, a real estate sales agent associated with Century 21 Commercial New Millennium, Stephanie Young and Robert Walters.

The Sales Agent has been marketing the real property for sale since January 8, 2023. The initial asking price was $6,500,000.00. After receiving market feedback from multiple potential buyers with no offers, the Sales Agent, with authorization for the Trustee, reduced the asking price to $5,995,000.00.

During the Sales Agent's brokerage marketing period, the Sales Agent had professional photography completed, prepared a "For Sale" brochure, added the listing to CoStar, LoopNet, RealMarkets.com, CREXi and BrightMLS. As a result of being in BrightMLS, the listing was syndicated out to multiple other high traffic websites, including Realtor.com. The Sales Agent also created a due diligence room with available due diligence materials on CREXi.com, with the available materials protected by a Trustee approved Confidentiality Agreement.

As of April 3, 2023, on CREXi, the listing received 1,333 impressions, 275 page views, 50 visitors, 13 Opened Offering Memorandums and 10 executed Confidentiality Agreements.

On January 31, 2023, the Sales Agent sent the listing via email to 6,294 prospects. Of these, 2,369 opened it (26.79% opening rate). On February 12, 2023, CREXi sent the listing via email to 1,686 prospects with 929 opening it (55.46% open rate). On February 21, 2023, Sales Agent sent an email to 3,382 prospects with 1,892 opening it (39.38%). On March 16, 2023, CREXi sent the listing via email o 3,121 prospects with 1,086 opening it (36.54% open rate).

The listing of the real property has also been posted on various social media platforms, including Facebook, Instagram, and LinkedIn. Sales Agent has also met multiple buyers at the property to conduct tours. The Sales Agent obtained a opening bid for the three parcels for a total

purchase price of $4,000,000.00.

As the transactions transitioned from a brokerage transaction to an auction, upon the filing of this Sales and Procedure Motion, Sales Agent will be updating the asking price to the proposed opening bid of $4,100,000.00. All of the above referenced marketing will be updated accordingly to reflect the proposed May 10, 2023 auction date, with the proposed terms and sales subject to Court approval.

The Trustee has determined that a sale by the Trustee at an auction subject to higher and better bids will recover more value than a foreclosure sale or a sale under chapter 7.

A court supervised auction subject to the public market of competitive bidding is the shortest and most efficient path to pay the accrued real estate taxes, the priority water and sewer liens, and returning value to secured creditors. A public auction has the prospect of competitive bidding with a chance to maximize the purchase price. The Trustee believes that a marketed auction of the real property will bear proceeds at least as great could be realized in a foreclosure sale outside of bankruptcy. A sale by the Trustee at auction will also generate those net sale proceeds in a substantially shorter time and possibly at a lower cost while ensuring notice to all affected parties.

## Background

1. This case was commenced on November 1, 2022 by the filing of a voluntary Chapter 11 petition and commencing this chapter 11 bankruptcy case ("**Bankruptcy Case**") [Dkt. No. 1].

2. The Debtor, Adams 3, LLC ("**Debtor**") is a single-asset real estate entity as defined by 11 U.S.C. § 101(51B). [Dkt. No. 25].

3. On November 30, 2022, Dashco, Inc. filed its Motion to Appoint Chapter 11 Trustee [Dkt. No. 29] seeking the appointment of a Chapter 11 Trustee.

4. On December 2, 2022, the Office of the United States Trustee ("**U.S. Trustee**") filed

Exhibit 2 - Motion to Sell    Page 4 of 19

a Motion to Convert or Dismiss Chapter 11 Case. [Dkt. No. 32]. In the U.S. Trustee Motion, the U.S. Trustee asked that this Court dismiss the case, or alternatively convert to Chapter 7, pursuant to 11 U.S.C. § 1112(b)(1).

5. The Court denied the U.S. Trustee's Motion to Convert or Dismiss Chapter 11 Case without prejudice, and granted creditor Dashco, Inc.'s Motion to Appoint Chapter 11 Trustee. [Dkt. No. 39].

6. Bradley D. Jones was appointed as chapter 11 trustee for the Debtor's bankruptcy estate ("**Bankruptcy Estate**") by an order entered December 20, 2022. [Dkt. No. 45].

7. The Debtor is the fee simple owner of the real properties located in the Adams Morgan section of the District of Columbia identified in **Exhibit A**, commonly referred to as 2406 18th Street, NW, Washington, D.C. 20009; 2408 18th Street, NW, Washington, D.C. 20009; and 2410 18th Street, NW, Washington, D.C. 20009, and hereinafter collectively referred to as the "**Real Property**."

**Relief Requested**

8. By this Sale and Procedures Motion, the Trustee seeks entry of an order substantially in the form of the proposed order submitted to the Court authorizing : (1) the sale of real property via an in-court auction; (2) the approval of the procedures for the auction and bidding of the Real Property, including a breakup fee for the opening bidder and the acceptance of a backup bidder should the winning bidder fail to close; and (3) the approval of the sale of the Debtor's Real Property pursuant to the auction and bidding procedures to the successful high bidder free and clear of liens, claim, and interests.

**Purchase And Sale Agreements**

9. Subject to approval by this Court, the Trustee has entered into three separate Purchase & Sale Agreements with Andrew Nimmer, or an entity created under the laws of the District of Columbia, as the opening bidder to purchase three separate parcels of real property owned by the Debtor. The total consideration is $4,000,000.00 and $51,000.00 in earnest money has been paid to the Trustee.

10. The first Purchase and Sale Agreement ("**PSA**") is for Square 2551/Lot 0035, also identified as 2406 18th Street, NW, Washington, D.C. 20009 ("**2406 18th Street PSA**") at the purchase price of $1,400,000.00 with a $17,000.00 earnest money deposit. The last date set in the 2406 18th Street PSA is March 24, 2023. March 24, 2023 is the "Effective Date" for that PSA.

11. The second PSA is for Square 2551/Lot 0034, also identified as 2408 18th Street, NW, Washington, D.C. 20009 ("**2408 18th Street PSA**") at the purchase price of $1,300,000.00, also with a $17,000.00 earnest money deposit. The last date set in the 2408 18th Street PSA is March 24, 2023. March 24, 2023 is the "Effective Date" for that PSA.

12. The third PSA is for lot 2551/Lot 0033, also identified as 2410 18th Street, NW, Washington, D.C. 20009 ("**2410 18th Street PSA**") for $1,300,000.00, together with a $17,000.00 earnest money deposit. The last date set in the 2410 18th Street PSA is March 24, 2023. March 24, 2023 is the "Effective Date" for that PSA.

13. The 2406 18th Street PSA, the 2408 18th Street PSA, and 2410 18th Street PSA are attached hereto as **Exhibit B** are hereinafter collectively referred to as the "**Purchase and Sale Agreements**."

14. The Purchase and Sale Agreements were obtained by the Trustee's employed Sales Agent with a cooperating broker, Greysteel Company.

15. Each of the Purchase and Sale Agreements contain a Bankruptcy Addendum to Purchase & Sale Agreement ("**Bankruptcy Addenda**") found at page five of each PSA

16. The Bankruptcy Addenda require closing on the sales under the Purchase and Sale Agreements "no later than the 60th day after the Court has entered an order (beyond all appeal periods) approving the Agreement ("**Sale Order**") or the first business day thereafter if the 60th day is a Saturday, Sunday, or legal holiday." Bankruptcy Addenda, ¶2. The Bankruptcy Addenda further sets December 15, 2023 as the last date final settlement on the sales to have occurred or " Purchaser shall have the right to terminate this Agreement and recover back the Deposit." *Id*.

17. Paragraph 4 of each of the Bankruptcy Addenda provides that the sale of the Real Property and the Trustee's obligations under the Purchase and Sale Agreement are subject to "Competing Offer(s)" gives the purchaser the "right of last offer."

18. The Purchase and Sale Agreements require approval of the award of break-up fees for opening bidder of $17,000.00 per each of the Purchase and Sale Agreements in the event the opening bidder is not the ultimate successful bidder. *See* Bankruptcy Addenda, ¶5.

19. Mr. Nimmer has provided a total of $51,000.00 to the Trustee as earnest money for the Purchase and Sale Agreements.

20. Paragraph 7 of each of the Bankruptcy Addenda make references an "Assignment of Residential Leases" requiring the Trustee as seller to "assign the residential leases set forth in Exhibit "1" attached hereto." Bankruptcy Addenda, ¶7.

21. At the time of execution and delivery, none of the Bankruptcy Addenda had the refenced exhibits.

22. The list of the "Residential Leases" defined in, and that were to be set forth in each of the Bankruptcy Addenda as Exhibit "1," and are now attached to the Purchase and Sale Agreements

at Exhibit B. *See* paragraph 13 above. By separate motion, the Trustee will be seek to assume the June 2, 2022 Residential Lease Agreement with Clare Elizabeth Whitman and Shaylyn M. Bailey and assigning that lease to the successful bidder.

23. Further addressing the Debtor's leases at the Real Property, paragraph 8 of each of the Bankruptcy Addenda make references to "Commercial Leases" requiring the Trustee "to reject the commercial lease and deliver the commercial unit (1st floor of the building) vacant as of Closing." Bankruptcy Addenda, ¶8.

24. In the event the commercial units are not vacant at closing, Bankruptcy Addenda paragraph 8 each have a proviso giving the purchaser the "sole discretion . . . to either (a) extend the contract for up to sixty (60) additional days to facilitate any pending evictions, with the Closing occurring within ten (10) days of all three spaces becoming vacant or (b) close on the transaction, assign the seller's interests in any commercial leases(s) to the Purchaser and give the Purchaser a $100,000.00 credit at Closing for each commercial tenant remaining in the Property." *Id*.

25. The "commercial unit(s)" are the commercial properties located on the first floor levels of the Real Property ("**Commercial Units**").

26. By motion filed on March 28, 2023 [Dkt. No. 84], the Trustee has sought to reject the commercial leases for the Commercial Units identified below:

    a. Lease Agreement between Glory, LLC and the Debtor effective June 21, 2021 for the floor level at 2406 18th Street, NW, Washington, D.C. 20009.

    b. Lease Agreement between the Debtor and Dreamland, LLC "originally signed on August 10, 2020 for an initial term of five years for "commercial property…located at 2408 18th Street, N.W., Washington, D.C. 20009."

    c. Lease Agreement between the Debtor and Hart's Desires, Inc. ("**Hart's**

**Desires**") dated October 1, 2022 for "a portion of the Property designated as 24010 *[sic]* 18th Street, NW, First Floor as evidenced in Exhibit A ("hereinafter referred to as the 'Premises')."

27. By his motion to approve settlement and compromise requiring turnover of real property filed on March 28, 2023, [Dkt. No. 83], the Trustee has sought approval of a settlement and compromise whereby the Hart's Desires Lease Agreement will be rejected, a $20,000.00 payment to the Trustee will be made in final satisfaction of all amounts due under the Lease Agreement and the principals of Hart's Desires liability on their Guaranty of Lease Agreement, with accompanying waivers of claims against the Bankruptcy Estate, and an order of turnover entered requiring Hart's Desires departure from its leased premises no later than April 30, 2023.

28. Paragraph 10 of each of the Bankruptcy Addenda provide that "[e]xcept with respect to the special warranty deed" the Real Property and "any contents being conveyed herewith, as sold "AS-IS, WHERE-IS CONDITION" with no representations or warranties " Bankruptcy Addenda, ¶10.

29. The "Contemporaneous Sale Condition Requirement" set forth in Paragraph 14 of each of the Bankruptcy Addenda expressly requires that closing under any one of the PSAs is conditioned on that purchaser closing under all of the Purchase and Sale Agreements: "settlement hereunder is conditioned on the concurrent settlement of the Property together with the Other Properties." Bankruptcy Addenda, ¶14.

30. The Bankruptcy Addenda set forth other terms and provisions that govern the Purchase and Sale Agreements.

31. The Trustee requests the Court approve the sale of the Real Property by way of an in-court auction pursuant to sections 363(b), and 363(f) of the Bankruptcy Code, the "Auction and Bidding Procedures" (as hereinafter defined), and on the terms and conditions set forth in the

Purchase and Sales Agreements free and clear of all liens, claims, encumbrances, and interests for the assumption of certain residential leases.

### Real Property To Be Sold

32. The Real Property set forth and described in the attached Exhibit A.

33. There are certain residential properties located on the second floor of the Real Property and commonly identified as 2406 18th Street, N.W., 2, Washington, D.C. 20009; 2408 18th Street, N.W., 1, Washington, D.C. 20009; and 2410 18th Street, N.W., 2, Washington, D.C. 20009 (collectively, "**HAP Residential Units**"). The Debtor's residential leases for the HAP Residential Units were assumed by the Trustee by Order Granting Trustee's Emergency Motion to Assume Executory Contract and Unexpired Residential Leases dated March 6, 2023 [Dkt. No. 80] and identified therein as the "Assumed Residential Leases."

34. The Real Properties also includes certain other residential property other than the Assumed Residential Leases located on the upper floors of the buildings included in the Real Properties ("**Remaining Residential Units**," and together with the Assumed Residential Leases, the "**Residential Units**"). Only one of the Remaining Residential Units is presently occupied.

35. Included in the Remaining Residential Units is the District of Columbia Residential Lease Agreement between the Debtor and Clare Elizabeth Whitman and Shaylyn M. Bailey dated June 2, 2022 listed in paragraph 22 above.

### Auction And Bidding Procedures

36. The Trustee seeks authority from the Court to approve the Court's live auction of the Real Property on May 10, 2023 at 9:30 a.m., or such date and time established by the Court ("**Sale Hearing**").

37. The Trustee requests that this Court approve the sale of the Real Property at the Sale Hearing pursuant to the following auction and bibbing procedures ("**Auction and Bidding Procedures**"):

   a. Andrew Nimmer, or an entity created under the laws of the District of Columbia, is the "**Opening Bidder**," and as the Opening Bidder is also a "Qualified Bidder" as subsequently defined herein.

   b. All bidders for the Real Property must agree to assume the Purchase and Sale Agreements and be bound by the terms of the Purchase and Sale Agreements in the event their bid is the "Winning Bid" as subsequently defined herein.

   c. All bids on the Real Property must be for all cash with no contingencies and the same terms as the Purchase and Sales Agreements.

   d. Only "Qualified Bidders" (as subsequently defined herein) may participate in the auction.

   e. Any entity seeking to register and participate in the auction and become a Qualified Bidder must present the Trustee with a cash deposit of $51,000.00 ("**Initial Deposit**"). The Trustee will provide wire instructions to prospective bidders for payment of the Initial Deposit.

   f. Other than the Opening Bidder, in order to become a bidder qualified to bid at the Sale Hearing ("**Qualified Bidder**"), in addition to payment of the Initial Deposit, all bidders submitting a bid must provide written evidence (in the form of a financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee and his Sales Agent) reasonably demonstrating such bidder's ability to close this all cash transaction ("**Financial Verification**").

   g. At the Sale Hearing, the Court, in consultation with the Trustee and his Sales Agent and professionals, shall determine the highest or otherwise best qualified bid and designate such bid as the "**Winning Bid**," and the bidder who submitted that Winning Bid will be the "**Successful Bidder**."

   h. The Successful Bidder shall be required to increase the Initial Deposit to a total of ten percent (10%) of the final highest bid within two (2) business days of close of the auction ("**Subsequent Deposit**," and together with the Initial Deposit, the "**Earnest Money Deposit**"). As a further condition to becoming a Qualified Bidder, all bidders must acknowledge that their entire Earnest Money Deposit is at risk if their bid is accepted and they cannot close on the transaction. The Earnest Money Deposit shall be held in escrow by the Trustee. No interest will be paid on the Initial Deposits or the Earnest Money Deposits.

i. Except for the Successful Bidder and any "Backup Bidder" (as subsequently defined herein), the Trustee shall return the Initial Deposits of all unsuccessful bidders no later than three (3) business days after the close of the Sale Hearing.

j. If the Successful Bidder fails to consummate the proposed sale on the terms and conditions of the Winning Bid, breaches the terms and conditions of the Winning Bid, or otherwise fails to perform its obligations hereunder or thereunder, other than as a result of a material default by the Trustee, the Trustee may, in consultation with its professionals and Sales Agent, and without further order of the Bankruptcy Court, deem the successful bidder to be a "**Defaulting Buyer**," at which time the Successful Bidder's bid shall be deemed rejected. A Defaulting Buyer automatically forfeits its Earnest Money Deposit.

k. At the Sale Hearing, the Court in consultation with the Trustee and his Sales Agent and professionals, shall determine the next highest or otherwise next best qualified bid and designate such qualified bid as the "**Backup Bid**" and the Qualified Bidder of that Backup Bid ("**Backup Bidder**") will have the option of acting as a Backup Bidder in the event that the Successful Bidder is unable or refuses to close on the Winning Bid.

l. Upon electing to serve as a Backup Bidder, that bidder shall also be required to post a Subsequent Deposit to increase its Initial Deposit to a total of ten percent (10%) of the Backup Bid within two (2) business day of close of the auction to establish the Backup Bidder's Earnest Money Deposit. The Backup Bidder must be able to satisfy all of the bidding requirements on twenty (20) days' notice that the Successful Bidder failed to close, and must close no later than twenty (20) business days after receiving that written notice and in no event later than December 15, 2023 ("**Backup Bid Closing Date**").

m. The Backup Bidder must agree that the Trustee will keep its Earnest Money Deposit until closing with the Successful Bidder. If the Backup Bidder consummates a sale on the terms and conditions of the Backup Bid, the Earnest Money Deposit of such Backup bidder will be applied to the purchase price at closing.

n. Upon a determination by the Trustee in consultation with his Sales Agent and professionals that the Successful Bidder is a Defaulting Buyer, the Trustee will be authorized, but not required, to consummate the sale with the Backup Bidder on the terms and conditions of the Backup Bid without further order of the Bankruptcy Court.

o. In the event that the Trustee seeks to consummate a sale on the terms and conditions of a Backup Bid with a Backup Bidder and such Backup Bidder fails to consummate such sale on or before the Backup Bid Closing Date, breaches its Backup Bid, or otherwise fails to perform, other than as a result of a material default by the Trustee, the Trustee may, in his business judgment, and without further order of the Bankruptcy Court, deem such Backup Bidder to be a Defaulting Buyer and pursue

      the same remedies set forth hereinabove with respect thereto (including, retaining and applying the Backup Bidder's Earnest Money Deposit as the Bankruptcy Estate's damages resulting from the breach or failure to perform by the Backup Bidder).

p.     The Successful Bidder must pay all closing costs and costs of sale.

q.     The auction will be conducted with bidding increments of $50,000.00 to encourage bidding increments high enough to provide value to the Bankruptcy Estate with the first bid at a total of $4,100,000.00.

r.     By submitting a bid, each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Real Property prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Real Property in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Real Property, or the completeness of any information provided in connection therewith or with the auction, except as expressly stated in these Auction Procedures.

s.     All bidders at the auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the auction, and the construction and enforcement of the successful bid, as applicable.

### Liens, Claims And Other Interests Against The Real Property

38.     A title report provided to the Trustee reveals the following liens against the Real Property:

a.     Unpaid real estate taxes and assessments estimated to total $75,000.00.

b.     That certain Deed of Trust and Security Agreement dated October 15, 2019 and recorded with the Washington, Recorder of Deeds ("**Recorder of Deeds**") on October 23, 2019 as Instrument Number 2019114317 securing Dashco, Inc. as assignee from Capital Bank, N.A. pursuant to that Assignment of Deed of Trust dated March 15, 2022 and recorded with the Recorder of Deeds on March 17, 2022, 2023 as Instrument Number 20230000000. ("**Dashco First DOT**"). The maximum amount of principal secured by the Dashco First DOT is $3,360,00.00.

c.     That certain Credit Line Deed of Trust and Security Agreement dated January 21, 2022 and recorded with the Recorder of Deeds on January 22, 2022 as Instrument Number 2020008929 securing Dashco, Inc. in the principal amount of $510,204.00 ("**Dashco Second CDOT**," and together with the Dashco First DOT, the "**Dashco DOTs**").

    d.    Government of the District of Columbia Department of Public Works, Solid Waste Management Administration Litter Control Administration Act Lien date June 19, 2008 and recorded with the Recorder of Deeds of June 19, 2008 as Document number 2008066406 in the amount of $300.00 ("**Litter Lien**").

    e.    District of Columbia Water and Sewer Authority Certificate of Delinquent Water/Sewer charges as dated and filed with the Recorder of Deeds on May 14, 2020 as Document Number 2020057605 in the amount of $1,219.35 ("**2020 Water/Sewer Lien**").

    f.    Notice of Pendency of Action ("**Notice of Lis Pendens**") dated October 14, 2022 and recorded with the Recorder of Deeds as Document Number 2022104338 ("**Lis Pendens**"). The Superior Court of the District of Columbia's electronic docket reflects a "Complaint for Tax Lien (Consent Granted) was filed on October 6, 2022. That docket further reveals that a "FORECLOSURE/TAX SALE/JUDGE" was scheduled for October 7, 2022. This Chapter 11 bankruptcy was commenced on October 1, 2022 staying that tax sale.

    g.    Order entered in Civil Action No 05-0009231R(RP) recorded with the Recorder of Deeds on April 4, 2019 as Document Number 2019034623 ("**Quiet Title Order**").

    h.    The Quiet Title Order was entered in litigation in the Superior Court of the District of Colombia with Sheldon Arpad as the plaintiff, and Sheldon Arpad, Personal Representative, The Estate of Vivian Arpad, Raymond Launay & Co., Inc., Raymond Launay, Daniel Launay and "*anyone else* holding any interest in the real property described in this caption" as defendants. The Quiet Title Order vests in Sheldon Arpad "with an absolute and indefeasible title in fee simple in and to " the Debtor's Real Property. *See* Quiet Title Order. ("Emphasis supplied").

    i.    District of Columbia Water/Sewer Authority Certificate of Delinquent Water/Sewer charges dated August 28, 2022 and recorded with the Recorder of Deeds as Document Number 2022089981 on August 29, 2022 in the amount of $9,183.89 ("**2022 Water/Sewer Lien**").

39.    18th DC, LLC filed an action styled a *18th DC, LLC v. Adams 3, LLC, et al* on March 2, 2023 and assigned adversary proceeding number 22-00205-ELG ("**18th DC Adversary Proceeding**"). In addition to the Debtor, the Chapter 11 Trustee and Dashco, Inc. are the defendants in the 18th DC Adversary Proceeding. On March 29, 2023, the Trustee filed his Answer to the Complaint.

40. The 18th DC Adversary Proceeding includes three counts: "Count I – Constructive Trust;" "Count II – Equitable Lien;" and "Count III – Declaration that Dashco Deed of Trust is Void." The gravamen of the Complaint in the 18th DC Adversary Proceeding is that the lien of Dashco is invalid. Given the pendency of the 18th DC Adversary Proceeding, the lien of the Dashco Deed of Trust is in bona fide dispute.

## Basis For Relief

41. The Trustee requests the Court approve the sale of the Real Property by way of an in-court auction pursuant to sections 363(b), and 363(f) of the Bankruptcy Code and Rule 6004 pursuant to the approved Auction and Bidding Procedures and on the terms and conditions set forth in the Purchase and Sales Agreements free and clear of all liens, claims, encumbrances, and interests.

## Approval Of The Sale Of The Real Property

42. Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

43. The proposed auction represents the exercise of reasonable business judgment by the Trustee.

44. Pursuant to section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of a lien, claim, interest or encumbrance if any one of the following conditions is satisfied:

    a.    applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

    b.    the lienholder or claimholder consents;

    c.    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

   d.  such interest is in bona fide dispute; or

   e.  the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f)(1)-(5).

  45.  In the sound exercise of his business judgment, the Trustee has determined that the proposed sale of the Real Property by way of an in-court auction is the best way to expose the Real Property to the market, obtain a buyer for the Real Property, and maximize the potential recoveries for the benefit of the Bankruptcy Estate.

  46.  "The court should review the trustee's actions utilizing a business judgment standard. *See, e.g In re Cult Awareness Network, Inc.*, 205 B.R. 575 (Bankr. N.D. Ill. 1997); *In re Wilson*, 94 B.R. 886 (Bankr. E.D. Va. 989). 'So long as the trustee's decision concerning how or whether to administer an asset or to pursue a cause of action falls within the proper scope of the trustee's business judgment, the trustee's decision [should] be upheld.'" *In re CHN Constr., LLC*, 531 B.R. 126, 133 (Bankr. E.D. Va. 2015).

  47.  In determining whether a sale satisfies the business judgment standard for purposes of approval, courts should require a showing that there is a sound business reason for the sale, that accurate and reasonable notice of the sale has been given, the sale will yield an adequate price (i.e., one that is fair and reasonable), and the parties to the sale have acted in good faith. The proposed auction will satisfy this standard.

### **Liens Claims And Other Interests Purged By Sale Order**

  48.  The Trustee seeks to sell the Real property free and clear of liens, claims, and other interests as follows:

  a. The Real Property can be sold be free and clear of the unpaid District of Columbia real estate taxes pursuant to 11 U.S.C. § 363(f)(1) as all accrued real estate taxes will be paid in full from the sale proceeds.

  b. The Real Property can be sold be free and clear of the Litter Lien, the 2020 Water/Sewer Lien, and the 2022 Water/Sewer Lien pursuant to 11 U.S.C. § 363(f)(1) as the Litter Lien, the 2020 Water/Sewer Lien, and the 2022 Water/Sewer Lien will be paid in full from the sale proceeds.

  c. The Real Property can be sold be free and clear of the Dashco DOTs pursuant to 11 U.S.C. § 363(f)(2) in the event that Dashco, Inc. consents to the sale.

  d. Alternatively, the Real Property can be sold be free and clear of the Dashco DOTs pursuant to 11 U.S.C. § 363(f)(3) because the sale at auction will result in a purchase price greater than the Dashco DOTS. Alternatively, the Real Property can be sold be free and clear of the Dashco DOTs pursuant to 11 U.S.C. § 363(f)(4) because of the bona fide disputes manifested and set forth in the 18th DC Adversary Proceeding.

  e. The Real Property can be sold be free and clear of the Lis Pendens pursuant to 11 U.S.C. § 363(f)(4) as no final order has been entered in the litigation referenced in the Lis Pendens, that litigation was stayed, and the Lis Pendens is in bona fide dispute.

  f. The Real Property can be sold be free and clear of the Quiet Title Order as the Debtor was not named in that litigation, the existence of the Dashco First DOT as assigned to Dashco, Inc. by Capital Bank, N.A. and the Dashco CDOT are evidence of subsequent transfers by the Debtor over the Quiet Title Order, and the scope and breadth of the Quiet Title Order raises due process concerns. Accordingly, and pursuant to 11 U.S.C. § 363(f)(4), the Quiet Title Order is in bona fide dispute.

49. The sale of the Real Property by way of an auction is in the best interests of the Debtor's estate and all interested parties.

50. Accordingly, pursuant to sections 363(f)(2), (3), and (4) of the Bankruptcy Code, the Real Property may be sold by the Trustee clear of any and all liens, claims, interests, and encumbrances.

**Terms of Sale Summary**

51. The Trustee proposes to sell the Real Property via live on-line auction, as follows:

   a. Type of Sale: Live auction.

   b. Property for Sale: The Real Property identified in Exhibit A attachment.

   c. Terms of Sale: The sale is "AS-IS, WHERE-IS" with no representations or warranties of any kind.

   d. Proposed Place and Time of Sale: United States Bankruptcy Court for the District of Columbia at the Sale Hearing. The proposed time of the auction is subject to change based on the Court's rulings and the exercise of the Trustee's business judgment and any recommendations from the Sales Agent or his professionals.

   e. Property Previews: The Real Property will be made available for preview by the members of the public who register as bidders for the auction up to three on-site previews to be scheduled by the Sales Agent.

   f. Buyer: Highest and best bidder at the conclusion of the auction.

   g. Appraisal Value: The Trustee has not obtained an appraisal of the Real Property. The Real Property have been listed for sale at $5,950,000.00 by the Trustee's Sales Agent.

   h. Closing: No later than the sixtieth (60th) day after the Sale Order becomes a final order. or the first business day thereafter if that day is a Saturday, Sunday, or legal holiday.

   i. Compensation to Sale Agent: two point five percent (2.5%) commission on the gross purchase price to CENTURY 21 Commercial New Millennium, and two point five percent (2.5%) to Greysteel Company.

  j. <u>Sales Agent Expenses</u>: $69.77 related to the Sales Agent's re-keying of the premises of the Real Property.

  k. <u>Sales Agent Compensation</u>: $2,400.00 for property maintenance, property preservation services, and property support services on behalf of the Trustee at the approved rate of $100.00 per hour, subject to the Trustee's application for approval of compensation.

  l. <u>Estimated Trustee's Commission</u>: The Trustee will seek compensation based upon the sales price in accordance with 11 U.S.C. § 326. Assuming a sales price of $4,100,000.00, the Trustee's commission based upon § 326 would be $143,250.00.

52. The Trustee requests that the Court enter an order providing that the 14-day stay period under Rule 6004(h) either does not apply or, that any applicable stay be waived.

53. The Trustee respectfully requests that this Court treat this Sale and Procedures Motion as a written memorandum of points and authorities or waive any requirement that this Sale and Procedures Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

**Payments At Closing**

54. The following shall be paid at the closing of the sale of the Real Property from the proceeds of sale to:

 (a) accrued real estate taxes due the District of Columbia for accrued real estate taxes and unpaid storm water fees attached to the Real Property

 (b) unpaid sewer and water liens held by the District of Columbia and attached to the Real Property;

 (c) closing costs and real estate commissions;

 (d) $69.77 to the Sales Agent for reimbursement of expenses;

 (e) $2,400.00 for the Sales Agent's compensation (subject to application and award);

 (f) $143,250.00 for the Trustee's statutory commission under 11 U.S.C. § 326(a); and

- 18 -

(g) the amounts due under the Dashco DOTs.

## Conclusion

WHEREFORE, the Trustee respectfully requests the Court enter an Order: (1) approving the Auction and Bidding Procedures to facilitate the sale of the Real Property; (2) scheduling hearing for the auction and sale of Real Property; (3) approving the sale of the Debtor's Real Property to the Successful Bidder at the auction free and clear of liens, claims, and interests free and clear of liens, claims, and interests pursuant to 11 U.S.C. §§ 363 (f)(2)-(4); (4) authorizing the Trustee to pay the Payments at Closing without further order of the Court; (5) authorizing the Trustee to take all actions necessary and reasonable to consummate the sale of the Real Property; and (6) granting such other and further relief as it may deem necessary or appropriate.

**BRADLEY D. JONES, CHAPTER 11 TRUSTEE**
BY COUNSEL

*/s/ Alexander M. Laughlin*
Alexander M. Laughlin (DC Bar No. 484489)
Bradley D. Jones (Bankr. D.D.C. No. VA68)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Ave., Suite 400
Reston, Virginia 20190
Tel:  (703) 218-2134 (Mr. Laughlin)
       (703) 218-2176 (Mr. Jones)
Fax:  (703) 218-2160
Alex.Laughlin@ofplaw.com
Brad.Jones@ofplaw.com

*Counsel for the Chapter 11 Trustee*

#5530464v7 092303/000002

- 19 -